UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHLEEN RANOWSKY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NATIONAL RAILROAD )<br>PASSENGER CORPORATION )<br>d/b/a AMTRAK *et al.*, )<br>)<br>Defendants. ) | Civil Case No. 15-1133 (RJL) |

MEMORANDUM OPINION
(March 26, 2017) [Dkt. # 31]

FILED
MAR 2 6 2017
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Kathleen Ranowsky ("plaintiff" or "Ranowsky") brings this action against the National Railroad Passenger Corporation ("Amtrak"), Amtrak Inspector General Tom Howard ("Howard"), and Chief Human Capital Officer for the Amtrak Inspector General, Terry Gilmore ("Gilmore"). Ranowsky alleges that Amtrak discriminated against her on the basis of her age and gender, unlawfully terminated her from her position as Deputy Counsel to the Amtrak Inspector General, and discriminated and retaliated against her when it refused to rehire her at Amtrak, all in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401, *et seq.*, and § 2-1402.11, *et seq.* Ranowsky further alleges that Howard and Gilmore aided and abetted Amtrak's discriminatory and retaliatory conduct, in violation of D.C. Code § 2-1402.62. Currently before the Court is defendants' Motion for Summary Judgment [Dkt. # 31]. Upon consideration of the parties' pleadings, the entire record in this case, and relevant law, the Court GRANTS summary

judgment in favor of defendants.

## BACKGROUND

Ranowsky began her employment with Amtrak on July 21, 1997, as an attorney in Amtrak's Law Department. Defs.' Statement of Undisputed Material Facts ("Defs.' SOF") ¶ 5 [Dkt # 31-2]; Ranowsky Dep. at 24:17–20 [Dkt. # 31-3]. In April of 2002, Ranowsky became Deputy Counsel in the Office of the Inspector General ("OIG"), where she remained until her termination. Defs.' SOF ¶ 6; Ranowsky Dep. at 24:19–22; 46:25–47:2. At all times, defendants Terry Gilmore ("Gilmore") and Thomas Howard ("Howard") were Chief Human Capital Officer for the Amtrak Inspector General and Inspector General for Amtrak, respectively. Defs.' SOF ¶¶ 12, 30; Pl.'s Statement of Material Facts Genuinely in Dispute ("Pl.'s SOF") ¶¶ 12, 30 [Dkt. # 40].

On November 18, 2014, Howard notified Ranowsky of her termination in a letter which stated: "[t]his letter serves as notification of the termination of your position as Deputy Counsel for the Office of Inspector General with the National Railroad Passenger Corporation, in accordance with Amtrak's Policy and Instruction Manual (APIM) Human Resources Policy 7.32.0[.] Termination will be effective December 2, 2014." 11/18/14 Termination Letter at 1 [Dkt. #38-4]. The stated reason for the termination was "loss of confidence" in Ranowsky's "ability to perform in the role of Deputy Counsel." *Id.* Her termination was designated as a "reduction in force," thereby making Ranowsky eligible for a severance agreement not ordinarily available to those employees who are involuntarily terminated unless designated as a reduction in force. Defs.' SOF ¶ 34; Gilmore Dep. at 33:12–18; 54:19–55:4 [Dkt. # 31-10]. Ranowsky declined the package

and later opted to collect early retirement benefits, so her termination designation was changed to "Early Retirement." Defs.' SOF ¶ 35; Gilmore Dep. at 63:22–65:14. At the time of her termination, Ranowsky was sixty-two years old. Ranowsky Dep. at 5:15–16. Howard, also sixty-two years old at the time, was Ranowsky's second level supervisor and was the sole decision-maker behind the decision to terminate Ranowsky's employment, although he did consult with other senior colleagues. Defs.' SOF ¶¶ 21, 65; Howard Dep. at 19:6–7, 97:17–99:8 [Dkt. # 31-4]; Howard Decl. ¶ 2 [Dkt. # 31-9].

Ranowsky also alleges Amtrak did not interview her for two positions to which she applied in 2015 as further age and gender discrimination and as an act of retaliation for the Charge of Discrimination she filed with the United States Equal Employment Opportunity Commission ("EEOC") in January 2015. *See* EEOC Charge of Discrimination, [Dkt. # 39-9 (Under Seal)]. First, in March 2015, Ranowsky applied to the open Deputy Counsel Position in Amtrak OIG, but OIG Deputy Inspector/Counsel Kevin Winters decided not to interview her. Defs.' SOF ¶¶ 47–51; Winters Dep. at 79:20–22 [Dkt. # 31-11]. Winters instead chose to hire Frank Mazurek, who was under the age of forty and had nearly a decade of experience in NASA's Office of Inspector General. Defs.' SOF ¶ 56; Winters Dep. at 102:16–19; Mazurek Dep. 19:6–20:16 [Dkt. # 31-13]. In July 2015, Ranowsky applied to an opening for an experienced transactional attorney position with the Amtrak Law Department, but the Managing Deputy General Counsel for the Law Department, William Herrmann, made a determination not to interview her because of his prior experience working with her and his determination that she would not "be a positive addition or contribution to the work" of the Department. Defs.' SOF ¶ 59; Herrmann

3

Decl. ¶ 3 [Dkt. # 31-14].

Plaintiff filed this Complaint in the Superior Court of the District of Columbia on June 10, 2015. Notice of Removal ¶ 1 [Dkt. # 1]. On July 15, 2015, defendants collectively removed this case to federal court pursuant to 28 U.S.C. §§ 1441(a) and 1446, on the grounds that Amtrak is a federally-chartered stock corporation and the United States owns more than one-half of its capital stock. *Id. See* 28 U.S.C. § 1349; *Nat'l R.R. Passenger Corp. v Lexington Ins. Co.*, 365 F.3d 1104, 1105 (D.C. Cir. 2004) ("The case is in federal court because Amtrak is a federal corporation and the federal government owns more than one-half of its stock.").

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the movant to show that there is no dispute of fact, but the non-moving party carries the "burden of producing . . . evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.*

When ruling on a motion for summary judgment, the court must accept as true the evidence of the non-moving party, and draw "all justifiable inferences" in favor of that party. *Id.* at 255. However, to the extent that the party opposing summary judgment will

4

bear the burden of proving facts at trial, those facts must be supported by competent evidence, and the absence of that evidence forms the basis for summary judgment. *See Celotex*, 477 U.S. at 322–24. A genuine dispute of material fact exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## ANALYSIS

### I. Legal Standard

Ranowsky brings her claims under the DCHRA, which makes it unlawful for an employer "to fail or refuse to hire, or to discharge, any individual" because of his or her "race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation." D.C. CODE § 2-1402.11(a)(1). The statute also prohibits retaliation against employees who exercise their DCHRA rights, stating that it is unlawful to "retaliate against . . . any person . . . on account of having exercised or enjoyed . . . any right granted or protected" under the DCHRA, and imposes liability on persons who aid or abet DCHRA violations. *Id.* § 2-1402.61(a), § 2-1402.62.

DCHRA discrimination and retaliation claims are analyzed the same as claims brought under federal employment discrimination statutes, and are thus subject to the traditional three-step framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1246 (D.C. Cir. 2011) ("We analyze discrimination claims under the D.C. Human Rights Act in the same way that we analyze discrimination claims under the federal anti-discrimination laws.");

*McCain v. CCA of Tenn., Inc.*, 254 F. Supp. 2d 115, 124 (D.D.C. 2003) ("The elements of a retaliation claim under the DCHRA are the same as those under the federal employment discrimination laws.").

Under this three-step framework, the plaintiff must first make out a prima facie case of discriminatory or retaliatory conduct. For discrimination claims, the plaintiff must show that "(1) she is a member of a protected class; (2) she suffered an employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002). For retaliation claims, a plaintiff needs to show "that she engaged in protected activity, that she suffered an adverse employment action, and that there was a causal link between the former and the latter." *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015). Once a plaintiff establishes a prima facie case, the employer must provide a legitimate non-discriminatory or non-retaliatory reason for its adverse action. *McDonnell-Douglas*, 411 U.S. at 802; *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015). If the employer cannot provide an actual, legitimate reason for the action, then the plaintiff is entitled to judgment. *Allen*, 795 F.3d at 39.

If, however, the employer offers a non-discriminatory or non-retaliatory reason for the challenged action, the burden-shifting framework disappears and the court's inquiry narrows. Once an employer offers a legitimate reason for it conduct, the existence of a prima facie case becomes legally irrelevant, and a court considering a motion for summary judgment need not decide whether the plaintiff met all the elements of a prima facie case for discrimination or retaliation. *United States Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711, 715 (1983) ("Where the defendant has done everything that would be

required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant."); *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 493 (D.C. Cir. 2008); *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009).

Once the employer asserts a legitimate, non-discriminatory or non-retaliatory reason for the action challenged, the only relevant inquiry is whether the employee has put forth sufficient evidence for a reasonable jury to conclude that the employer's proffered explanation is a mere pretext and the employer intentionally discriminated or retaliated against the employee. *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015); *Vatel*, 627 F.3d at 1247. Summary judgment must be granted for the defendant if the plaintiff fails to "produce sufficient evidence that would discredit [the employer's proffered explanation] and show that the actions were retaliatory" or discriminatory. *Baloch v. Kempthorne*, 550 F.3d 1191, 1200 (D.C. Cir. 2008).

## II. Ranowsky Fails to Present Sufficient Evidence That Her Termination Was the Result of Age or Gender Discrimination.

Ranowsky alleges that her termination as Deputy Counsel on November 28, 2014 was the result of unlawful age and gender discrimination. Am. Compl., Cts. I and III [Dkt. # 15]. Whether or not Ranowsky has established a prima facie case of either age or gender discrimination, Amtrak has nevertheless offered evidence that her termination was the product of a legitimate, non-discriminatory decision—i.e., that Amtrak Inspector General Tom Howard lost confidence in the Office of Counsel and in Ranowsky specifically and felt the need to take the office in a different direction. Defs.' SOF ¶ 20;

Howard Dep. at 152:22–153:2; Amtrak's Resps.' To Pl.'s Interrogs., No. 6 [Dkt. # 31-7]. In February 2014, Howard became the Amtrak Inspector General and began to assess the structure and staffing of Inspector General's office and it's Office of Counsel. Defs.' SOF ¶¶ 12, 13; Howard Dep. at 20:8–11, 32:8–18, 53:22–54:8. Howard testified that, based on his professional interactions with Ranowsky, he doubted the reliability of her legal advice, believed that she was disrespectful in her communications with him, and found her unhelpful on specific OIG projects. Defs.' SOF, ¶¶ 20–23; Howard Dep. at 63:5–64:22; 158:1–15; 169:18–171:7. Because of this loss of confidence, Howard terminated Ranowsky in November 2014. Defs.' SOF ¶ 20; 11/18/14 Termination Letter.

To support her claim for age discrimination, Ranowsky relies primarily on the fact that her duties were assumed by two lawyers who were younger than her. Nadine Jbaili, a younger female attorney, was assigned to temporarily assume Ranowsky's responsibilities and was eventually made Associate Counsel in the Office of Counsel. Defs.' SOF ¶¶ 39–40, 42; Howard Dep. at 132:9–133:14; 202:1–14. Frank Mazurek, a younger male attorney, was ultimately hired to replace Ranowsky as the permanent Deputy Counsel. Defs.' SOF ¶¶ 55–56; Winters Decl. ¶ 7 [Dkt. # 31-12].

The fact that Ms. Ranowsky was replaced by younger attorneys may support an inference of age discrimination, but it is insufficient to establish discrimination by itself. *See Vatel v. All. of Auto. Mfrs.*, 679 F. Supp. 2d 15, 17 (D.D.C. 2010) (Leon, J.) (holding that replacement by employee outside protected class may support inference of discrimination, but does not establish discrimination by itself), *aff'd*, 627 F.3d 1245 (D.C. Cir. 2011). Furthermore, any inference of discrimination is undercut by the fact that

8

Ranowsky was fired by Amtrak Inspector General Howard, who is the *same age* as Ranowsky. Defs.' SOF ¶¶ 64–65; Howard Dep. at 19:6–7. Courts in our District have repeatedly held that a decision-maker's inclusion in the same protected class as the terminated plaintiff cuts against any inference of discrimination. *See Gonda v. Donohoe*, 79 F. Supp. 3d 284, 296 (D.D.C. 2015) (explaining that decision-maker's age—over forty years old—cut against an inference of age discrimination); *Perry v. Shinseki*, 783 F. Supp. 2d 125, 138 (D.D.C. 2011) (holding that decision-maker's membership in the same protected class as the plaintiff "weighs further against an inference of discrimination.").

To bolster her age discrimination claims, Ranowsky offers evidence that Gilmore asked her about her retirement plans before she was terminated, and that Amtrak engaged in succession planning in the months before she lost her job. Ranowsky Dep. 154:6–15; Gilmore Dep. at 131:4–132:6 [Dkt. # 39-5 (Under Seal)]. But that evidence is woefully insufficient for a jury to conclude that Howard was motivated by ageism when he terminated her. There is nothing discriminatory or suspicious about an employer asking an employee about retirement plans. *Joyce v. Ofc. of Architect of the Capitol*, 106 F. Supp. 3d 163, 174–75 (D.D.C. 2015); *Shipman v. Vilsack*, 692 F. Supp. 2d 113, 118 n.5). Furthermore, there is nothing even vaguely discriminatory about a company engaging in succession planning, as companies are required to prepare for change and maintain operational continuity. *See Boston v. Blue Cross & Blue Shield of Kan., Inc.*, 438 F. App'x 763, 767 (10th Cir. 2011).

Ranowsky presents even less evidence that her termination was motivated by gender discrimination. To support her claims, Ranowsky relies primarily on the fact that she was

ultimately replaced as Deputy Counsel by a male attorney. But this evidence is undercut by the fact that she was partially replaced in her duties by Nadine Jbaili, a female, which weighs against an inference of gender discrimination. *Murray v. Gilmore*, 406 F.3d 708, 715 (D.C. Cir 2005) ("[A] replacement within the same protected class cuts strongly against any inference of discrimination."); *see also Brown v. Brody*, 199 F.3d 446, 451 (D.C. Cir. 1999) (explaining that "any sexual discrimination claim would be baseless because two of the three employees selected . . . were women"). Even more significantly, Ranowsky's male supervisor in the Office of Counsel was terminated on the same day as Ranowsky. Ranowsky Dep. at 147:2-4; Howard Dep. at 19:22–20:16, 120:15–121:2. Not only does this lend further support to Howard's claim that he fired her as part of an effort to take the Counsel's Office in a different direction, it makes it difficult for a reasonable jury to conclude that her termination was driven by her gender. *See Gilbert v. Babbitt*, No. 92-cv-1124, 1993 WL 468465, at *5 n.5 (D.D.C. Oct. 29, 1993) (holding that female plaintiff's allegation of gender discrimination was "preposterous" where the evidence showed that male employees were subject to the same punishment for the "similar infractions").

In her attempt to show that Howard's asserted reasons for firing her were pretextual, Ranowsky makes much of the fact that Gilmore coded her termination as a "reduction in force" on a personnel action form to argue that Howard's asserted reasons for firing her were pretextual and that her termination was actually motivated by discrimination. Ranowsky is certainly correct that a jury can conclude that an employer's asserted reasons are pretextual when it offers shifting and inconsistent explanations for its action.

10

*Sw. Merch. Corp. v. NLRB*, 53 F.3d 1334, 1344 (D.C. Cir, 1995); *Allen v. Johnson*, 795 F.3d 34, 40 (D.C. Cir. 2015). However, the proper focus is on the *decision-maker's* asserted reasons. *Montgomery v. Gotbaum*, 920 F. Supp. 2d 73, 81 (D.D.C. 2013) (explaining that pretext arguments turn on a "decision-maker's shifting and inconsistent explanations") (internal quotation marks omitted); *Johnson v. Dist. of Columbia*, 99 F. Supp. 3d 100, 109 (D.D.C. 2015) ("Johnson does not allege that anyone *involved in the decision* to terminate him offered inconsistent reasons for doing so." (emphasis added)). Howard, who made the decision to terminate Ranowsky, has consistently stated that he fired her because he lost confidence in her. Gilmore, who did not make the decision to fire Ranowsky, testified that he coded the termination as a "reduction in force" simply so that Ranowsky would be entitled to a severance package. Gilmore Dep. at 33:12–18; 54:19–55:4. This discrepancy between Howard's asserted reasons and a human resources form he did not prepare is not sufficient for a jury to conclude that Howard was somehow motivated by ageist or sexist bias.

Even drawing all justifiable inferences in her favor, Ranowsky has failed to present sufficient evidence that would permit a reasonable jury to conclude that she was terminated because of her age or her gender, rather than as a result of Howard's loss of confidence in her performance as Deputy Counsel. As a result, defendants are entitled to judgment on her claims related to her termination in November 2014.

### III. Plaintiff Fails to Present Sufficient Evidence that Amtrak's Refusal to Rehire Her in 2015 Was Motivated By Discrimination or Retaliation.

In 2015, Ranowsky applied for the position of Deputy Counsel in the Amtrak OIG,

and for a temporary contract attorney position in Amtrak's corporate law department. Defs.' SOF ¶¶ 47, 58; Ranowsky Dep. at 191:5. She was neither interviewed nor hired for either job. *Id.* ¶ 59; Herman Decl. ¶ 3. She alleges that Amtrak's refusal to interview or hire her was driven by age and gender discrimination, and in retaliation for her filing an EEOC Charge of Discrimination in January 2015. Am. Compl., Cts. I, III, and V.

Amtrak has offered legitimate, non-discriminatory, and non-retaliatory reasons for declining to interview Ranowsky for either position. Kevin Winters, the Amtrak Deputy Inspector General/Counsel, was responsible for hiring the new Deputy Counsel in 2015. Defs.' SOF ¶ 45; Winters Decl. ¶ 2. He testified in his deposition that he decline to interview Ranowsky because she had previously held the same position and had been terminated because the Inspector General lost confidence in her performance. Defs.' SOF ¶¶ 49, 50; Winters Dep. at 80:1–9. William Hermann, the corporate law department's Managing Deputy Counsel, decided that Ranowsky should not be interviewed for the temporary contract attorney position because he did not believe she would be a positive contribution to the law department, a conclusion that he reached based on his own personal interactions with her when they both worked in the law department and when she was Deputy Counsel for the OIG. Defs.' SOF ¶¶ 59, 60; Hermann Decl. ¶ 3.

Once again, Ranowsky fails to present sufficient evidence to show that the refusal to hire her in either position was discriminatory or retaliatory. With respect to discrimination, she relies on much the same evidence she did in arguing that her termination was unlawful—that she was replaced by Deputy Counsel Frank Mazurek. As an initial matter, this argument only reaches the refusal to rehire her as Deputy Counsel; it

has no bearing on the contract attorney position. More importantly, as discussed above, an employee's replacement by a younger person of a different gender is patently insufficient to rebut an employer's asserted non-discriminatory reasons. As to her retaliation claim, Ranowsky can only point to the fact that she filed an EEOC charge before Amtrak decided not to rehire her. But this is also insufficient, as our Circuit has clearly held that the mere fact that an employer's adverse action follows closely after an employee's assertion of rights—here, the filing of an EEOC charge—will not overcome the presumption that the employer's asserted reasons are valid. *Allen v. Johnson*, 795 F.3d 34, 47 (D.C. Cir. 2015). As a result, defendants are entitled to judgment on Ranowsky's claims of discrimination and retaliation with respect to the refusal to rehire her in 2015.

### IV. Plaintiff's Claims Against Howard and Gilmore for "Aiding and Abetting" Violations of DCHRA Fail as a Matter of Law.

Lastly, Ranowsky alleges that Howard and Gilmore individually "aided and abetted" Amtrak's discriminatory and retaliatory conduct against her. Am. Compl., Cts. II, IV, and VI. However, an individual cannot be held liable for aiding and abetting discriminatory or retaliatory conduct where the organization itself did not engage in discriminatory or retaliatory conduct. *See Gaujacq v. EDF, Inc.*, 601 F.3d 565, 576 (D.C. Cir. 2010) (holding that an individual could not aid and abet unlawful discrimination where the organization did not engage in discrimination). Because Amtrak is entitled to summary judgment on Ranowsky's substantive discrimination and retaliation claims, then Howard and Gilmore are entitled to summary judgment on her aiding and abetting claims as a matter of law.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge